Next case is Mayfair Wireless v. Cellco Verizon AT&T Sprint at ALPS 2014-15 At issue is a magistrate judge's decision that was adopted in full by the district court, in which the magistrate judge found two alleged breaks in the chain of title. Both of these alleged breaks involved the transfer of title pursuant to UCC foreclosure sales. All the parties connected with the sales, all the parties agreed and abided by the patents being transferred pursuant to the sales. Not a single party objected to the sales. None of the parties under state law can now object to the sales. If the magistrate judge's decision is upheld, the patent at issue would effectively be rendered onerous, as if it never existed in the first place. Well, there certainly were a lot of things going on here. I agree with that, Your Honor. That, what you said, sounds like an injustice. There are a lot of things going on that the purported owners were responsible for. There were certainly, this is not the simplest chain of title case, I certainly understand. No, and I mean, you're saying it would be onerous. Well, if we agreed with you on the first lapse wasn't a lapse, but we didn't agree with you on the second, then wouldn't the patent be sitting in the coffers of technology alternatives right now? Technology alternatives, for two reasons it would not. Technology alternatives consented to the patent being pledged to services by design. You didn't hear the disagree with you part? No. If we agree with you on the first lapse, but not the second. The second lapse is the transfer to technology alternatives. Technology alternatives to tech alt, to design whatever. So if we don't agree with you on that one, if we don't think that transfer from tech alt to design was any good, because we don't agree there was consent by technology alternatives, doesn't the patent sit with technology alternatives now? Or is that a defunct corporation? Technology alternatives is a defunct corporation. It's no longer in existence. Technology alternatives allowed the patent. So where did all of its assets go? Assets presumably reverted to its owners. So they're the ones in possession of the patent now, if we disagree with you on this second point. It's not that the patent doesn't exist and nobody owns it. It exists and somebody owns it. It's just a question of who. But under pubs of champagne. Under what? Under pubs of champagne. A great name. The Seventh Circuit case interpreting UCC, Illinois UCC law. Technology alternatives is stopped from claiming any sort of interest in the patent today. And also it consented to the patent being pledged to services by design. Jim Solomon, who is the CEO of technology alternatives, was also the CEO of TechAlt. TechAlt never got the patent. TechAlt was the parent corporation to technology alternatives. That's correct. Moreover, the problem goes all the way back when only two out of six inventors signed to GUI tech. Well, two of the six assignments were recorded with the PTO. The subsequent four inventors signed assignments. They assigned the patent. To the extent it hadn't been assigned previously, which we respectfully believe it had, they assigned it to Mayfair. Yes, but a lot of it happened in the meantime. And maybe they no longer had the right to assign to Mayfair. Well, we don't think they had title to the patent because the patent was assigned initially to GUI tech. GUI tech was the owner of the patent. And GUI tech, abided by UCC foreclosure sale, was the patent application. Then you had the Hillsdale problem. Yes. It was a security agreement. And Hillsdale took over as a result of that. Yes. And there was a failure of proof. There wasn't a bill of sales showing that they were entitled to ownership. We're skipping around, but the problem is that there are so many flaws in this chain. Well, to be clear about the proof, we had a sworn statement from GUI tech CEO that the patent went from GUI tech to Hillsdale. We had the fact that Hillsdale had a security agreement that encompassed the patent application. We have that Hillsdale foreclosed on GUI tech's assets, including the patent application, and then purchased GUI tech's assets at a UCC sale. That's what we don't know. We don't know if a UCC sale took place. Well, there is one document that we don't have. We do have the GUI tech CEO, subsequent to the sale, he filed a sworn statement with the PTO. But that can be self-serving. Fair enough. I looked at the record carefully, and I didn't see any evidence that the sale actually took place. There's a notice that we don't know if it was ever published or if it ever went out. There's nothing there. Well, we do not have the bill of sale. And the reason we don't is because Hillsdale Bank wouldn't produce that absent a subpoena. Discovery has not started in the case. I called Hillsdale Bank personally and tried to say, can we get the bill of sale? And they said we need a subpoena in order to do that. We were dealing with the motion to dismiss at that time. And so respectfully, to the extent that there's any factual question at issue here, we respectfully submit that we should be afforded the opportunity to take discovery to resolve those factual issues. At that point, wouldn't you make the bank a named party in the lawsuit? I don't know. Quite frankly, I don't know under what theory. They're not an infringer so far as we know. And maybe we can interplead them. What occurred to me is calling them and trying to get the bill of sale. They said, please submit to us a subpoena. Go ahead. Well, we did not submit a subpoena. That's correct. But we believe that if that's an issue, we believe that we should have the opportunity to submit a subpoena in discovery. Now, the appellees here, when we were in the lower court, we had this issue about a presumption, that technology alternatives is the proper assignee and patentee. The district court, the magistrate found that there was a presumption. The appellees admitted that the presumption existed. If that presumption exists at all, there's not a need for further discovery. We have the factual record that's consistent with the notion that the chain of title was appropriated from GUI tech through technology alternatives. I don't understand the presumption you're talking about. There's a presumption that if an assignment is recorded with the PTO, then it is valid. But this assignment was never recorded with the PTO. So what is the presumption you're talking about? The presumption is if the patent issues to the patentee, that the patentee is the rightful owner. So the patentee, in order to satisfy the PTO's own standards to issue a patent, has to satisfy the PTO director that he or she or it is the rightful owner of the patent. It has to. But, you know, stranger things have happened. The patent office makes mistakes. And here, there is no assignment that was ever provided to the patent office. So technically, under its rules, it should not have listed whoever it was. I can't keep track of all these people. I understand. As the patentee, because no assignment was actually filed with the PTO. A notice of assignment, a la 3B. Yeah, but usually that's a single document. In most cases, in my experience, it's not really a notice of an assignment. Here's a document contemporaneous with the assignment that we are recording in the patent office. Right. I haven't seen this sort of, let me file a notice of an assignment without an actual assignment. Right. Well, two responses to that. One, the magistrate did find that that notice of assignment satisfied the standard for conveyance. Well, that doesn't satisfy the standard for whether or not an assignment is recorded with the PTO, which is the only place I know of where a presumption vis-a-vis an assignment and ownership arises. Fair enough. But we don't know exactly what other documents were submitted to the PTO. We have that notice of assignment. What do you mean you don't know what other documents were submitted to the PTO? Are you suggesting that something was lost in prosecution? I'm not, Your Honor. There's no other document besides the notice of assignment that we have that would constitute an assignment. But so never filed in this case was a recorded assignment. Under those circumstances, I'm pretty sure the PTO was not supposed to list. Technology alternatives. No, not the technology alternatives or GUI tech or Hensdale. The patent issued technology alternatives. But going back to the only break in the chain of title, pre-issuance, that break that the court found was between GUI tech and Hensdale pursuant to UCC foreclosure sale. I thought they also found something between tech alternatives and tech alt. That was after the patent issued. Right. So there's two. There's one pre-issuance. I'm sorry. And there's one post-issuance. Yes, but that ultimately relates to whether Mayfair is a proper plaintiff here. If there was a defect between technology alternatives and tech alt, that affects the result as well. And if I'm remembering correctly, TA, technology alternatives, didn't assign tech alt. It became a sub of tech alt, which is a different story. It became a subsidiary of tech alt. But bear in mind, what we're talking about here are transfers of the patent pursuant to UCC foreclosure sales. And so technology alternatives consented to tech alt assigning the patent as collateral. Technology alternatives did not object to the UCC foreclosure sale. That happened 10 years ago. Technology alternatives under state law, if you look at pubs of champagne, if you look at the Chicago title case, if you look at the Bryant case, when it doesn't stand up and say during the course of the UCC sale, we clearly had noticed that it was patents going from one party to another. It's then a stop from challenging it has an ownership interest. That part I agree with you on. What I don't get to is therefore it actually transferred. That's the part that I feel like isn't quite right about what you're saying. Well, if it's a stop from asserting an ownership interest. Maybe you're right. Nobody owns it. Maybe I'll go back to the very first thing you stood up and said, okay, nobody owns it. That's the point. If it's a stop, it can't stand up and say we have an ownership interest in this. The UCC foreclosure sale has got to have a degree of finality to it. Technology Alternatives says, okay, we're going to allow this to be part of the UCC foreclosure sale. We're going to allow it to be used as collateral. Even though you don't own it? Technology Alternatives owns it. Yeah, but we're going to allow TechAlt, who doesn't own it, to use something as collateral as they don't own it. Yes. And pubs of champagne, a third party can allow someone to use their collateral to sign it, to use their property as collateral and security agreement. And then, pursuant to the foreclosure sale, they're not standing up and saying, okay, we object because we want our patent. They didn't say that. They were clearly on notice that Jim Solomon was part of that. He was the CEO of Technology Alternatives in addition to being the CEO of TechAlt. So I would encourage you to look at the last two paragraphs of Sky Technologies and the policy rationale for why we need finality in UCC foreclosure sales. Mr. Karchin, you're into your rebuttal time. You can continue. It's your turn. I will wait for rebuttal. Thank you, Your Honor. Mr. Franklin. Who owns this patent? Your Honor, we don't necessarily know who owns it. We know Mayfair has not shown that they own it. And that is not on us. That is on them, and that is on their predecessors. What about the final assignment by all six inventors to Mayfair? Right. That did not cure the problem because, as everyone admits, at least two of them, and most likely six of them, assigned their rights prior to that to another company. In other words, the six inventors no longer had title to the patent. Right. And in the attempt to rectify all these potential problems, they couldn't do that. Right. Mayfair has never made an argument that that rectifies the problem, and it couldn't because that was a belt-and-suspenders kind of a thing, and they did not have the right at that point to give to Mayfair. I could take these in Crown Law's court. I think I probably should. Was there an obligation for Hinsedale to file a bill of sale on that foreclosure? File it with the PTO, Your Honor? The PTO or with the state? There's always a secured interest now. I don't know about the state, Your Honor, but if there were a public foreclosure sale, then there would have been some sort of a public notice. And I would say on that regard there is no evidence that there ever was a foreclosure sale. My colleague over here refers to the statement that was made by GUI Tech CEO a year later, which, as Your Honor points out, could be self-serving. That statement actually only said that Hinsedale Bank took possession of the patents pursuant to an execution of a security interest. That's just the first step in a security foreclosure. It's a repossession. The next step and the critical step under Sky Technologies is the foreclosure sale itself. And following the repossession, a number of different things could have happened. Hinsedale could have reached an agreement with GUI Tech, in which case GUI Tech would retain the rights in the collateral. Hinsedale could have sold it to someone else. It could have been a private sale, not a public sale, which would require— Yeah, but there's no evidence of any of that and nobody else. GUI Tech certainly didn't act at any relevant point after these moments as though it owned the patent. I mean, you've got a supported sale that took place. You've got a CEO testifying that it, in fact, did take place. We don't have any writing, but as far as I can tell, there's the one exception to the writing requirement, right? So I don't know. I feel like you're asking me to make the one exception to the writing requirement require writing. No, Your Honor. I think what we're asking you to do is to make sure that there is evidence that that exception is satisfied. But the CEO came along and said it happened. No, he didn't say—my only clarification I was going to point out is that he didn't say a foreclosure sale happened. He said Hinsedale Bank took possession of the patents, whatever that means, by execution of a security interest. That is only the first step in a foreclosure. He did not say that there was a foreclosure sale. And that is the bill of sale, Your Honor. That's what would be the bill of sale. And if it were a private sale— When the CEO says that the bank took possession of a patent, and these are business individuals, and when we look at the word possessed, wouldn't that show that or lead us to believe that the bank took ownership? No, Your Honor. I think under foreclosure law, that would just be a possession. Possession means that you then have to dispose of the collateral. And it is not on us, I guess, is what I'm trying to say. Mayfair at all times, they are the party asserting the right to prosecute this patent. They have the burden of proving that they have title to the patent, and they did not do that. They did not issue a subpoena, Your Honor, and parties routinely issue or seek jurisdictional discovery. They knew two years before the magistrate judge ruled that they claim, anyway, it's not evidence, they claim that Hinsedale was going to produce it with a subpoena. They made no effort to secure a subpoena, and there's nothing in their brief to this court that mentions any question about discovery. And I would also add that it's at page 617, I believe, of the record, when the magistrate judge expressly asked them at the hearing, do you need discovery, they said, no, Your Honor, we don't think there's a need to take discovery on this. And this issue is exactly what we're talking about now. So what we have here is just simply Mayfair as the party with the burden of proving title has failed to prove that title, and there's nothing unusual about that. In terms of the ownership, yes, Your Honor, we don't know exactly who owns it, but I do agree with, I think, Judge Moore's original comments that somebody owns the rights to this. It's just a matter that they did not prove who it is. And I would also add that there is a reason behind these rules. The federal law requires the written assignment to make patent transactions similar to those involving transactions in land. And the reason is so that everyone knows exactly who owns it and who does not. And in this case, the reason we don't know is that the procedures weren't followed. And if there's going to be an exception to the requirement, and it should be a limited one in our view for foreclosures, there has to be at least clear evidence, as there was in Sky Technologies, that all of the foreclosure procedures were followed and that this was, in fact, an operation of law. I would like to turn at this point, if I might, to the second break in title, which was, so even assuming for the sake of argument that the patent somehow passed or made its way to technology alternatives, there is admittedly no written assignment of any interest in the patent from technology alternatives to TechAlt. There's no dispute about that. The TA became a subsidiary of TechAlt. Eventually, they did, Your Honor. And it was, I think, assumed by the parties that the patent would be transferred following that transaction. But as this court ruled, and there was no assignment, and as this court ruled in Abraxas, and this is clear precedent of this court, the fact that they are parenting of subsidiaries doesn't transfer the patent. You still need that written assignment of the interest in the patent. So they refer to the subsequent foreclosure. But all of the documentation of that foreclosure makes clear that it was simply the assets of TechAlt being transferred to SBD. TechAlt never validly received any interest in the patent. But was TA an asset of TechAlt? You mean, was technology, you're saying TA's technology alternatives? Technology alternatives. Was it an asset of TechAlt? Right, it was a sub. It was not an asset that passed in the foreclosure, Your Honor. If you look at the security agreement, there's nothing about, I don't know that you can foreclose on a subsidiary, but there you're probably getting beyond my knowledge of UCC law. But I think UCC would not cover a corporate subsidiary. So no, I think in this context, it was not. The issue here, I think, frankly, is even under their theory of the case, there was some sort of consent. It's either a stop or a consent, which is a matter of, stop is a variant of consent, under which rights to the patent somehow passed or were given from technology alternatives to TechAlt. That's the only way that STD could have foreclosed on this patent, is if some rights in the collateral had been given by technology alternatives to TechAlt. I would just point out that 261, the patent statute, requires a written instrument, not just for transfers of patents, but transfers of any interest in a patent must be by writing. So we have, even by their theory, a voluntary transfer of an interest in the patent from technology alternatives to TechAlt. That fails, as the district court held, in fact, because there's no written assignment. So you would say the question of who owns this patent is not before us. The only question is, does Mayfair? Yes, Your Honor, and they do not. If there's any further questions, if not, I think I will. No one ever gets penalized for not using a written statute. I hope that's the case. Mr. Karchner. Thank you. Just a couple of points. On the pre-issuance chain, we talked about the bill of sale. He said that we do not issue a subpoena. That is true. The appellees admitted to the district court, to the magistrate, that there was a presumption that technology alternatives was a proper assignee, and we had the record evidence there. As we told the district court, on the point of the bill of sale, given that they were admitting a presumption exists under federal circuit precedent, and the evidence we had, we did not need to issue a subpoena at that point in time. We could take the issue up generally in discovery as the case moved forward. The magistrate, in her report and recommendation, said specifically, Mayfair requests further discovery, including permission to obtain documents from third parties by subpoena, to fully resolve these issues. That's exactly what we told her. As we move forward in discovery generally with this case, we will take the third-party discovery to resolve the factual issues they have raised. We think we should be afforded that opportunity. With respect to the foreclosure procedures not being followed that he talked about, they never made an argument about that. All the parties to the foreclosure sales abided by the foreclosure sales. There was never a question that they weren't followed. I think they are picking up on the fact that the magistrate, in her decision, said there's no evidence that the foreclosure sales were followed, but that was not an argument they had raised in the district court. Again, if we move forward into discovery, and if that's an issue that we need to resolve, we can resolve it in discovery. With regard to the assets that transferred to Tech Hall, this, again, is a new argument they made here, a factual argument, that there's nothing that shows the patent transferred to services by design-wise. They talk about an order of replevant in their brief here. The order of replevant has an attachment A that specifically lists the patent number on page 7. The same is true for the assignment and bill of sale that's at A330-332. If you look on page 332 of the record, the patent is explicitly listed as an asset that's being transferred to services by design-wise. Again, I will go back when we talk about the UCC sale between services by design-wise in Tech Hall and technology alternatives who are noticed there. There has to be a finality to it. Technology alternatives is no longer a corporation that exists. If they can't identify an owner, which is something they haven't done, we don't think that their theory is right as a matter of law. We think that that foreclosure sale needs to be final. If you look at the state law, the cases we cite. Counselor, you were tossed out of court on a failure to state a cause, correct? There's a 12-1 motion, Your Honor. Okay. Going into filing a complaint, weren't you aware that you may have a problem with asserting title? We were aware of that. Why didn't you plead out all the facts on the chain of title in your complaint? Well, what we were aware of was that there was an argument before that the six inventors hadn't assigned the patent. So we went forward and we got assignments from the remaining four inventors whose assignments were not recorded in the PTO. We pled in the complaint that we rightfully own the patent and we have jurisdiction to submit it. What I mean, you pled that you were the owner, but you didn't plead the chain of title. Well, if they are, it is their obligation. They think we don't have chain of title to raise factual arguments as to why. Conversely to 12-1. All they have to do is say there's no chain of title here, they're not the owners. You look at the complaint, there's nothing else there. It's a fair point. But if you look at the Gould case, the Third Circuit Gould case, they have to come forward with facts because they raised, I don't know exactly how many arguments, let's say 20 arguments. It would almost be impossible for us to anticipate every argument they're going to raise in pleading out a complaint. Once they raise the argument, if you look at Gould, we should be afforded the opportunity to respond with our own facts as to why their arguments lack merit. Thank you, Mr. Karchin. We'll take the case under advisement. Yes, Your Honor. Thank you.